J. A34044/14

2016 PA Super 7

| | | |
|---|---|---|
| CITIMORTGAGE, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| EDWARD F. BARBEZAT, | : | No. 536 MDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered February 25, 2014,
in the Court of Common Pleas of Berks County
Civil Division at No. 12-211627

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND STABILE, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:          **FILED JANUARY 07, 2016**

Appellant Edward F. Barbezat appeals from the order entered February 25, 2014, in the Court of Common Pleas of Berks County, granting appellee CitiMortgage, Inc.'s motion for summary judgment in this *in rem* mortgage foreclosure action.  For the reasons set forth below, we affirm.

On August 15, 2003, in consideration of a loan in the principal amount of $152,793, appellant executed and delivered a note in favor of and to Fulton Bank.  (*See* Complaint, 9/25/12, Exhibit B.)  To secure his obligations under the note, appellant concomitantly executed and delivered to Mortgage Electronic Registration Systems, Inc. ("MERS") ("solely as nominee for Lender . . . and Lender's successors and assigns"), a mortgage for the property located at 119 Berkley Street, Reading, Berks County, Pennsylvania, as security for the note.  (*Id.*, Exhibit C.)  On August 2, 2012,

MERS assigned the mortgage to appellee, which recorded the same on August 6, 2012. (*Id.*, Exhibit D.) Appellee also is in possession of the note endorsed in blank. (*Id.*, Exhibit B.)

On September 25, 2012, appellee filed a mortgage foreclosure complaint against appellant, requesting judgment against him for, *inter alia*, $137,625.55. (*See id.* at ¶ 9.) In the complaint, appellee alleged that appellant had failed to make the scheduled payments on the mortgage since April 1, 2012; and consequently, under the terms of the mortgage agreement, the entire loan balance became due and payable. (*See id.* at ¶ 8.) Moreover, appellee alleged it complied with the requirements of Act 6 (41 P.S. § 403) by sending appellant a written notice of intention to foreclose ("the Notice"). (*See id.* at ¶ 10.) Appellant filed an answer to the complaint, generally denying appellee's averments and raising new matter.

On November 18, 2013, appellee moved for summary judgment against appellant on the basis that appellant (1) failed to raise a genuine issue of material fact in his answer and new matter and (2) admitted all material allegations against him by virtue of his general denials. (*See* motion for summary judgment, 11/18/13 at ¶¶ 2, 12.)

Objecting to appellee's summary judgment motion, appellant raised two principal defenses. First, he argued appellee failed to comply with Act 6. Specifically, appellant argued that appellee sent the Notice on June 21,

2012, when appellee did not own the debt because MERS did not assign the mortgage to appellee until August 2, 2012. (Appellant's response to summary judgment, 12/13/13 at ¶¶ 38-42.) Appellant argued that the Notice was defective because appellee's name incorrectly appeared thereon. Second, appellant argued that appellee lacked standing to bring this foreclosure action because the mortgage and the note **sub judice** were insufficient to establish appellee's ownership of the debt relating to the subject property. (**Id.** at ¶¶ 66-72.)

On February 25, 2014, the trial court granted with prejudice appellee's motion for summary judgment. In a memorandum of law accompanying its order, the trial court determined as meritless appellant's challenge to the Notice. Particularly, the trial court concluded Act 6 did not require that the actual mortgagee be named in the notice. (Trial court memorandum of law, 2/25/14 at 1.) The trial court also concluded that, based on the record, appellee established its ownership of the debt. In this regard, the trial court noted appellee was "the holder[] of a valid, recorded assignment of mortgage." (**Id.**) Moreover, the trial court determined that appellant failed to offer any evidence beyond what was alleged in his pleadings to support his contention that appellee was not a real party in interest. (**Id.** at 2.)

Appellant timely appealed to this court. Following appellant's filing of a Pa.R.A.P. 1925(b) statement, the trial court issued a Rule 1925(a) opinion,

wherein it largely incorporated the reasoning set forth in its February 25, 2014 memorandum of law.

On appeal, appellant argues the trial court erred in granting appellee's summary judgment motion because (a) appellee lacked standing to initiate the action, and (b) appellee served on appellant a deficient Act 6 notice of intention to foreclose. (Appellant's brief at 3, 7.)

Against this background, we are mindful that:

> [o]ur scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.
>
> Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Hovis v. Sunoco, Inc.*, 64 A.3d 1078, 1081 (Pa.Super. 2013), quoting *Cassel-Hess v. Hoffer*, 44 A.3d 80, 84-85 (Pa.Super. 2012). Summary judgment in mortgage foreclosure actions is subject to the same rules as any other civil action. *See* Pa.R.C.P. 1141(b).

Appellant's first argument that appellee lacked standing to bring the underlying foreclosure action is premised upon appellant's assertion that

appellee never owned the alleged debt. Appellant asserts that appellee did not establish it possessed a valid assignment of the mortgage, and that the note was never assigned or otherwise transferred to appellee. (Appellant's brief at 3, 6.) Appellant therefore asserts that appellee was not the real party in interest and lacked standing to bring this action. (***Id.***)

Pennsylvania Rule of Civil Procedure 2002 provides, "[e]xcept as otherwise provided . . . all actions shall be prosecuted by and in the name of the real party in interest, without distinction between contracts under seal and parol contracts." Pa.R.C.P. 2002(a); ***see also J.P. Morgan Chase Bank, N.A. v. Murray***, 63 A.3d 1258, 1258 (Pa.Super. 2013) (finding a debtor's claim that appellee bank was not a real party in interest to bring foreclosure action was a challenge to appellee's standing). "[A] real party in interest is a [p]erson who will be entitled to benefits of an action if successful. . . . [A] party is a real party in interest if it has the legal right under the applicable substantive law to enforce the claim in question." ***U.S. Bank, N.A. v. Mallory***, 982 A.2d 986, 993-994 (Pa.Super. 2009) (citation and quotation marks omitted; some brackets in original).

In a mortgage foreclosure action, the mortgagee is the real party in interest. ***See Wells Fargo Bank, N.A. v. Lupori***, 8 A.3d 919, 922 n.3 (Pa.Super. 2010). This is made evident under our Pennsylvania Rules of Civil Procedure governing actions in mortgage foreclosure that require a plaintiff in a mortgage foreclosure action specifically to name the parties to

the mortgage and the fact of any assignments. Pa.R.C.P. 1147. A person foreclosing on a mortgage, however, also must own or hold the note. This is so because a mortgage is only the security instrument that ensures repayment of the indebtedness under a note to real property. *See Carpenter v. Longan*, 83 U.S. 271, 275 (1872) (noting "all authorities agree the debt is the principal thing and the mortgage an accessory."). A mortgage can have no separate existence. *Id.* When a note is paid, the mortgage expires. *Id.* On the other hand, a person may choose to proceed in an action only upon a note and forego an action in foreclosure upon the collateral pledged to secure repayment of the note. *See Harper v. Lukens*, 112 A. 636, 637 (Pa. 1921) (noting "as suit is expressly based upon the note, it was not necessary to prove the agreement as to the collateral."). For our instant purposes, this is all to say that to establish standing in this foreclosure action, appellee had to plead ownership of the mortgage under Rule 1147, and have the right to make demand upon the note secured by the mortgage.[1]

Based upon the record evidence produced by appellee in support of its motion for summary judgment, we reject appellant's first argument. Here, appellee not only averred, but also produced evidence that it was the holder

---

[1] The rules relating to mortgage foreclosure actions do not expressly require that the existence of the note and its holder be pled in the action. Nonetheless, a mortgagee must hold the note secured by a mortgage to foreclose upon a property. "The note and mortgage are inseparable; the former as essential, the latter as an incident." *Longan*, 83 U.S. at 274.

of the mortgage. Specifically, appellee alleged in its complaint that "[Appellee] is [a] proper party . . . by way of an Assignment of Mortgage recorded August 6, 2012 under Instrument 2012032210." (Complaint, 9/25/12 at ¶ 6.) Appellee produced copies of the original recorded mortgage and its recorded assignment to appellee. (*Id.* at ¶ 4-7.) Where an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights. *See Smith v. Cumberland Group, Ltd.*, 687 A.2d 1167, 1172 (Pa.Super. 1997). Accordingly, the uncontroverted evidence of record indicates appellee properly held the mortgage by way of assignment from MERS. We note also, although appellant argues a lack of standing in appellee to assert rights under the mortgage, appellant offers no evidence in opposition to the motion for summary judgment to establish a genuine issue of material fact as to appellee's ownership of the mortgage.

Appellant's argument that appellee cannot establish ownership of the note, because it was never assigned or otherwise transferred to appellee, is similarly without merit. The note produced by appellee in this case identifies appellant as the "Borrower" and Fulton Bank as the "Lender." The note was endorsed by Fulton Bank without recourse to the order of Principal Residential Mortgage Inc. ("PMI"). PMI in turn endorsed the note without recourse in blank. A note endorsed in blank becomes payable to "bearer" and may be negotiated by transfer of possession alone until specially endorsed. *See* 13 Pa.C.S.A. §§ 3109(a), 3205(b). The note as a negotiable

- 7 -

instrument entitles the holder of the note to enforcement of the obligation. *See* 13 Pa.C.S.A. §§ 3109(a), 3301. Thus, appellant's argument that ownership of the note cannot be established in appellee because there was no formal assignment or transfer is unavailing, because "the chain of possession by which [a party] c[o]me[s] to hold the [n]ote [is] immaterial to its enforceability by [the party]." *Murray*, 63 A.3d at 1266; *see Bank of America, N.A. v. Gibson*, 102 A.3d 462, 466 (Pa.Super. 2014) (rejecting an identical argument). Appellee, as the holder of the note, a negotiable instrument not challenged herein, was entitled to make demand upon and to enforce the obligations under the note. Accordingly, given appellee's uncontested ownership of the mortgage and possession of the note, the trial court did not err in concluding that appellee had standing as a real party in interest to bring the underlying foreclosure action.

We observe that, although this appeal lies from the trial court's grant of summary judgment in favor of appellee, appellant anchors his standing argument on rules governing pleadings. If appellant desired to continue to challenge appellee's standing at the summary judgment stage based upon his assertion appellee did not own the debt, it was incumbent upon the appellant to produce evidence to demonstrate there was a material issue of fact in this regard to defeat appellee's summary judgment motion. Appellant's attempt to continue to challenge standing based upon the averments of his pleadings does not suffice for summary judgment

purposes. *See* Pa.R.C.P. 1035.3(a) (an adverse party may not rest upon the mere averments or denials in its pleadings). Indeed, as the trial court noted, appellant fails to point to any evidence of record to demonstrate the existence of any genuine issue of material fact with respect to appellee's ownership of the debt at the summary judgment stage. (*See* trial court memorandum of law, 2/25/14 at 2 ("[Appellant] rests on [his] pleadings and does not present any specific facts indicating that a valid assignment does not exist, nor provides any indication that further discovery would uncover those facts[.]").) To successfully defend against appellee's summary judgment motion, it was incumbent upon appellant to establish "one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion." Pa.R.C.P. 1035.3(a)(1); *see Marks v. Tasman*, 589 A.2d 205, 206 (Pa. 1991) (decided under materially similar predecessor Rule 1035(d)). Here, appellant merely alleges in his new matter and in response to the summary judgment motion that appellee has not established ownership of the debt. He points to no evidence in the record to support this bare assertion, despite the above-recited evidence of record. Accordingly, no dispute exists as to any genuine issues of material fact with respect to appellee's ownership of the debt. Appellee had standing to bring the underlying foreclosure action.

In considering appellant's second argument, we conclude the trial court did not err in determining that the Notice *sub judice* under Act 6 was proper.

In 1974, the Pennsylvania Legislature enacted Act No. 6, 41 P.S. § 101 *et seq.*, commonly referred to as "Act 6." ***Bankers Trust Co. v. Foust***, 621 A.2d 1054, 1056 (Pa.Super. 1993), ***appeal denied***, 631 A.2d 1007 (Pa. 1993). "Act 6 is essentially a comprehensive interest and usury law with numerous functions." ***Id.*** (citation omitted). The Act's provision regulating notice of foreclosure for owners of relatively modest homes was intended to afford homeowners who are in dire economic straits a measure of protection from overly zealous residential mortgage lenders. ***Id.***

Section 403 of Act 6, setting forth the requirements of a notice of intention to foreclose, provides as follows:

> (a)  Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.
>
> (b)  Notice of intention to take action as specified in subsection (a) of this section shall be in writing, sent to the residential mortgage debtor by registered or certified mail at his last known address and, if different, at the

residence which is the subject of the residential mortgage.

(c)    The written notice shall clearly and conspicuously state:

(1)    The particular obligation or real estate security interest;

(2)    The nature of the default claimed;

(3)    The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance including what sum of money, if any, must be tendered to cure the default;

(4)    The time within which the debtor must cure the default;

(5)    The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and

(6)    The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default.

(d)    The notice of intention to foreclose provided in this section shall not be required where the residential mortgage debtor, has abandoned or voluntarily surrendered the property which is the subject of a residential mortgage.

41 P.S. § 403.

"Residential mortgage lender" means any person who lends money or extends or grants credit and obtains a residential mortgage to assure payment of

the debt. The term shall also include the holder at any time of a residential mortgage obligation.

41 P.S. § 101.

Appellant claims that he was never properly notified of the foreclosure action because the Notice named the incorrect lender. (Appellant's brief at 8.) Appellant argues that appellee did not own the debt at the time the Notice was served on appellant. (*Id.*) Appellee sent the Notice on or about June 21, 2012, but the mortgage was not assigned to appellee until August 2, 2012. (*Id.*) Therefore, according to appellant, the Notice cannot possibly set forth the obligations owed by appellant. (*Id.*) The listed obligation is to appellee, which did not own the debt at the time. (*Id.* at 8-9.) Appellant contends that appellee identifying itself as the mortgagee prior to the recordation of its assignment of the mortgage, proves defective under Section 403(c)(1). Appellee does not deny that its name appears on the Notice rather than the name of the original mortgagee, Fulton Bank. (Trial court opinion, 5/6/14 at 2.)

Appellant's claim that the Notice was defective because appellee was not the "residential mortgage lender" at the time of the June 21, 2012 Act 6 Notice improperly conflates the purposes of the Act 6 Notice with the date for the recording of the assignment of the mortgage. As stated above, the purpose of 41 P.S. § 403(a), is to provide a measure of protection to residential homeowners who are in dire economic straits from overly zealous residential mortgage lenders. By requiring notice of deficiency and an

opportunity to cure, mortgage lenders cannot immediately foreclose when a deficiency occurs. The specific notice requirements are all directed to the interest of the debtor, identifying the debt, the nature of the default, and relief and remedies available to the debtor to cure the deficiency.

There is no requirement that the residential mortgage lender be specifically identified and a servicing agent can provide such notice. ***See Federal National Mortgage Assoc. v. Woody***, 25 Pa.D.&C.3d 604, 606 (Phila. 1982) ("Close scrutiny of § 403 of the act fails to reveal any requirement therein that the actual mortgagee be named in the notice."). The chain of possession of the note and the mortgage is not required to be disclosed. How the holder gained possession of the note and mortgage is simply not a part of the protections provided to the debtor.[2] Section 403

---

[2] This interpretation is consistent with the real world buying and selling of mortgage instruments. It is not uncommon for a mortgage instrument to change hands frequently through the life of the mortgage. Such transfers have little to do with the terms and conditions of the mortgage for the debtor. As demonstrated by this case, appellant was on notice at the time of the closing in 2003 that Fulton Bank held the note and that MERS as nominee for Fulton Bank held the mortgage on his property.

> MERS is a national electronic loan registry system that permits its members to freely transfer, among themselves, the promissory notes associated with mortgages, while MERS remains the mortgagee of record in public land records as "nominee" for the note holder and its successors and assigns. MERS facilitates the secondary market for mortgages by permitting its members to transfer the beneficial interest associated with a mortgage—that is, the right to repayment pursuant to the terms of the promissory note—to one another, recording such

simply puts the residential homeowner on notice that the delinquent mortgage is subject to foreclosure at some future date unless the owner takes some action. It is not a foreclosure action, and therefore the requirements of such an action are not necessary to establish proper notice.

Furthermore, as appellee states, the date of the recording of the mortgage assignment is of no consequence. (Appellee's brief at 9.) Section 101 defines a residential mortgage lender to include the holder "at any time" of a residential mortgage obligation. (**Id.**) Appellee properly pled ownership of the note and the mortgage in its complaint. As the holder in due course of a note endorsed in blank, no formal assignment or transfer is necessary; the chain of possession is immaterial to the note's enforceability. As the mortgage follows the note, appellee was the owner of both.[3]

---

transfers in the MERS database to notify one another and establish priority, instead of recording such transfers as mortgage assignments in local land recording offices. It was created, in part, to reduce costs associated with the transfer of notes secured by mortgages by permitting note holders to avoid recording fees.

**Montgomery County, Pa. v. MERSCORP Inc.**, 795 F.3d 372, 374 (3rd Cir. (Pa.)) (2015) (footnote omitted) (deciding that 21 Pa.C.S.A. § 351 did not require mandatory recording of assignment of a mortgage in Pennsylvania).

[3] Although MERS assigned the mortgage to appellee in August 2012, one cannot say with certainty when appellee came into possession of the note and mortgage. One cannot find that such possession did not exist in June 2012 when the Act 6 Notice was sent. Additionally, as set forth in **Mallory**, **supra**, once in possession of the note and mortgage, a lien holder can

J. A34044/14

Order affirmed.


Shogan, J. joins the Opinion.

Stabile, J. files a Concurring and Dissenting Opinion.

---

institute foreclosure proceedings even before a formal assignment of the mortgage takes place.

> The "crux" of Appellant's argument is that, before Appellee could file a complaint in mortgage foreclosure, Appellee was required to have executed and recorded a written assignment from MERS, thereby indicating it was the real party in interest. We reject this argument.
>
> . . . .
>
> In the case **sub judice**, as Appellee averred in its complaint, it was the "legal owner" of the mortgage, thereby indicating it was the holder of the mortgage's note. Moreover, prior to the entry of default judgment, as Appellee indicated in its complaint it was going to do, an assignment of the mortgage was executed between Appellee and MERS. . . . Simply put, contrary to Appellant's suggestion, the recording of an assignment of the mortgage was not a prerequisite to Appellee having standing to seek enforcement of the mortgage via a mortgage foreclosure action.

**Mallory**, 982 A.2d at 993-994 (footnotes omitted). **Accord Fusco v. Hill Financial Savings Association**, 683 A.2d 677, 681 (Pa.Super. 1996);

- 15 -

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/2016

---

***Commonwealth, Pennsylvania Game Commission v. H.I. Ulrich***, 565 A.2d 859, 862 (Pa.Cmwlth. 1989).